UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JASON GOOLSBY,**<br>**1517 F Street, N.E.**<br>**Apt. F10**<br>**Washington, D.C. 20002,**<br><br>　　　　**Plaintiff,**<br><br>**v.**<br><br>**THE DISTRICT OF COLUMBIA,**<br><br>　　**SERVE:**<br><br>　　**Muriel Bowser**<br>　　**Mayor of the District of Columbia**<br>　　**John A. Wilson Building**<br>　　**1350 Pennsylvania Avenue, N.W.**<br>　　**Washington, D.C. 20004,**<br><br>　　**and**<br><br>　　**Karl A. Racine**<br>　　**Attorney General of the District of**<br>　　**Columbia**<br>　　**441 4th Street, N.W.**<br>　　**Washington, D.C. 20001,**<br><br>　　**and**<br><br>**JOHN DOE DEFENDANTS 1-10**<br>**AND JANE DOE DEFENDANT 1,**<br>　　**Individually, and as employees/agents of**<br>　　**Defendant District of Columbia,**<br><br>　　　　**Defendants.** | **Civil Action No. _____** |

**COMPLAINT**

Plaintiff Jason Goolsby ("Jason"), through undersigned counsel, for his Complaint against Defendants the District of Columbia (the "District") and unidentified John Doe Defendants 1-10 and Jane Doe Defendant 1 (collectively, "Defendants"), states as follows:

**Introduction and Summary**

1.      This federal civil rights and common law action is brought by Jason Goolsby, under 42 U.S.C. § 1983 to redress Defendants' willful, deliberate and callous deprivation of Jason's constitutional rights in causing or failing to prevent the false imprisonment, assault, and battery of Jason.

2.      As a result of Defendants' illegal actions and/or inactions, Jason suffered physical and emotional pain and suffering, and suffers, and will in the future continue to suffer, from serious emotional distress and injury, for which he will require treatment.

3.      At all times relevant hereto, the District and its agents/employees, including John Does 1-10 and Jane Doe 1, owed common law, statutory, regulatory, and Constitutionally protected duties of care to Jason.  At all times relevant hereto, the District's Metropolitan Police Department ("MPD") officers and the District's employees at the Office of Unified Communications ("OUC"), who were responsible for the receiving and handling 911 calls, were acting on behalf of the District and within the scope of their authority, agency and/or employment.  Jason's injuries were directly and proximately caused, *inter alia*, by Defendants': (a) willful, deliberate and callous deprivation of Jason's constitutional rights; (b) failure to properly handle and investigate a citizen's 911 call; (c) failure to properly relay essential information, and/or passing on false information regarding a citizen's 911 call to MPD officers

in the field; (d) negligent and intentional use of excessive force; and (e) false imprisonment of Jason, detaining him against his will and depriving him of his freedom of movement.

4.    Jason seeks damages from the District, its agents, and the unidentified John Does 1-10 and Jane Doe 1, in their individual capacity, for damages proximately relating to their misconduct and from the John and Jane Doe Defendants, in their individual capacity, for their negligence and deprivation of Jason's civil rights.

## PARTIES AND JURISDICTION

5.    Jason is, and at all relevant times hereto has been, an adult resident of the District of Columbia. He is a proud graduate of the charter class of the Richard Wright Public Charter School for Journalism and Media Arts. Jason was an Ambassador for his high school. As an Ambassador, he was part of a group invited by First Lady Michelle Obama to participate in a Career in Music and Film Symposium at the White House. Jason has also been an ambassador for DC Showoff, which is a youth social marketing campaign that encourages DC youth to share their aspirations, dreams, talents, friendships, and personal style via social media. The campaign engages youth in activities that develop their leadership skills and cultivates self-awareness in their decision-making.

6.    The Court's personal jurisdiction over the District is manifest.

7.    John Doe Defendants 1-10 are unidentified agents or employees of the District, specifically, the MPD. Jane Doe Defendant 1 is an unidentified agent or employee of the District, specifically the OUC.  The John and Jane Doe Defendants are sued in their individual capacities with respect to Plaintiff's claims under 42 U.S.C. § 1983.   The Court has personal jurisdiction over the John and Jane Doe Defendants pursuant to D.C. Code Ann. §§ 13-422, 13-423.

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that the claims filed by Jason pursuant to 42 U.S.C. § 1983 and the U.S. Constitution involve a "federal question."  In addition, this Court has subject matter jurisdiction over Jason's § 1983 claim pursuant to 28 U.S.C. § 1343.  This Court has supplemental jurisdiction over Jason's state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper pursuant to 28 U.S.C. § 1391, insofar as (a) the District is a defendant in this litigation; (b) Jason resides in this federal judicial district; (c) all of the principal events giving rise to this action took place in the District; and (d) the District is located in this federal judicial district.

10.     The District was properly given lawful notice of this claim pursuant to D.C. Code § 12-309 on or about March 31, 2016, through a properly served notice of claim to Mayor Muriel Bowser.

11.     The District was further properly given lawful notice of this claim pursuant to D.C. Code § 12-309 on or about November 20, 2015, in that it created and released an investigative report regarding this incident.

## FACTS COMMON TO ALL COUNTS

12.     On the evening of Monday, October 12, 2015, at approximately 6:00 p.m. EST, Jason and two friends left a local "bootcamp" in Southeast D.C., where they had been going through orientation to become volunteers to help troubled youth.

13.     Jason, an incredibly talented and gifted musician, had a scheduled studio session that evening, for which he would have to pay $35.00.

14.     Not having enough cash on his person for the studio cost, Jason, accompanied by his friend, Michael Brown ("Michael"), and one other minor male, walked to the Citibank location near 6th Street and Pennsylvania Avenue, S.E., so that Jason could use the ATM.

15.     The young men walked into the vestibule to access the ATM at the Citibank. As Jason was about to withdraw money from his account, he received a text message from the studio owner, indicating that he had to postpone the session.

16.     At this time, while Jason was contemplating whether to withdraw cash from the ATM now that his studio session was cancelled, he observed a Caucasian family of three walking towards the bank, clearly intending to use the ATM. The family consisted of a mother, a father, and a baby in a stroller.

17.     Jason realized that the family may need help getting the stroller into the ATM vestibule, and instinctively wanting to be courteous and helpful, went over and held the door open for the family.

18.     At this point, Jason overheard the woman say to her husband that she had forgotten something in her car. The family left without using the ATM.

19.     Upon information and belief, the woman later stated that she felt "uneasy" because Jason and his friends were present in the ATM vestibule and therefore, she "made an excuse to leave."

20.     Upon information and belief, this still unidentified woman, who felt "uneasy" due to the presence of young black men, then made a 911 call.

21.     Upon information and belief, this 911 call was received and handled by Jane Doe 1 at the OUC.

22.     At all relevant times herein, Jane Doe 1 was working in his/her capacity as an agent/employee of the District.

23.     Upon information and belief, the unidentified female caller reported to Jane Doe 1 that Jason and his friends were not doing anything inside the bank and the caller even reiterated this point, *i.e.*, that they "weren't doing anything in the bank."

24.     Upon information and belief, the unidentified female caller later told John Doe 1, an MPD investigating officer who conducted an interview with the 911 caller, that Jason and his friends "had not committed any crime in her presence."

25.     Upon information and belief, based on nothing more than a call from a woman, who for whatever personal reasons was suspicious of young black men in the same space as she, Jane Doe 1 told the caller that the police would respond to check out Jason and his friends.

26.     Upon information and belief, Jane Doe 1, acting in his/her capacity as an agent/employee of the District, then relayed false and/or misleading information to John Does 1-10, MPD officers in the field, regarding the unidentified woman's 911 call.

27.     At all relevant times herein, John Does 1-10, MPD officers involved in this incident, were working in their capacity as employees/agents of the District.

28.     Upon information and belief, based on Jane Doe 1's false information and/or gross misrepresentations regarding the unidentified female's 911 call, most of the responding MPD officers involved in this incident believed that they were responding to an imminent or already attempted robbery, i.e., that there had been overt action in furtherance of committing a violent crime.

29.     Upon information and belief, John Doe 2, an MPD officer, believed he was responding to an attempted robbery, i.e., overt action in furtherance of committing a violent

crime. Upon information and belief, John Doe 2 reported after the incident that a call for service was voiced by Jane Doe 1 on behalf of a caller who felt three individuals "were possibly going to attempt to rob someone in the vicinity of the secure ATM vestibule."

30.     Upon information and belief, John Doe 3, an MPD officer, believed he was responding to a possible robbery, i.e., the actual commission of a violent crime. Upon information and belief, John Doe 3 reported after the incident that he received a radio run for a "possible robbery."

31.     Upon information and belief, John Doe 4, an MPD officer, believed he was responding to an actual attempted robbery. Upon information and belief, John Doe 4 reported after the incident that he received a call for an "attempt [sic] robbery at the Citibank," i.e., that a violent crime had actually occurred.

32.     Upon information and belief, John Doe 5, reported after the incident that he was responding to an "investigate **the trouble**" call, i.e., suggesting that some sort of potential criminal activity had occurred.

33.     Upon information and belief, John Doe 6, an MPD supervising officer, reported after the incident that he heard a radio run for a "possible attempt [sic] robbery" at an ATM, i.e., that a violent crime potentially had occurred.

34.     These misrepresentations by Jane Doe 1, were, and are, patently false – Jason and his friends had, in reality, just completed orientation to become volunteers to help troubled youth, quite a far cry from an imminent or already attempted robbery.

35.     Upon information and belief, these misrepresentations were never clarified to John Does 1-10, the responding MPD officers.

36.     At the same time that the John Does 1-10 were being fed demonstrably false and/or misleading information by Jane Doe 1, Jason and his friends, still unaware that they had just become "suspects" in a non-existent felony (or series of felonies, or any crime, for that matter), had left the Citibank and were simply walking down the street.

37.     When John Does 1-10 first came upon Jason and his friends, they were simply walking down the street.

38.     At this point, John Does 1-10 could see Jason and his friends were not at the Citibank, could observe that the teenagers were not doing anything wrong, and there was still no report of an actual crime.

39.     Instead of attempting to clarify or investigate whether any crime had actually occurred, possibly making Jason a suspect of an actual crime, and with seemingly no regard for Jason's safety, nor his Constitutional Rights, and without any reasonable suspicion nor probable cause, John Does 1-10 converged on the teenagers as if they were apprehending a dangerous felon (as opposed to a completely innocent soul fresh off of training to become a volunteer).

40.     Jason, who was simply walking down the street, suddenly saw a police SUV, operated by John Doe 2, driving at a very high rate of speed towards him. Jason believed that John Doe 2 was trying to run him over. Jason jumped up onto the curb just in time to avoid being struck by the vehicle. Not knowing any of the false law enforcement communications running rampant, Jason had absolutely no idea why a police vehicle would drive directly at him.

41.     John Doe 2, who almost hit Jason with his vehicle, got out of his vehicle with one hand on his gun, and a can of pepper spray in his other hand. John Doe 2 aggressively and threateningly yelled at Jason to get down on the ground or he would pepper spray him. Jason responded that he had not done anything wrong, and that he was not going to get down because

he knew what would happen to him if he did, meaning that he would be seriously injured by John Doe 2. Fearing for his life, while facing John Doe 2 with one hand on a gun and the other holding pepper spray, Jason fled.

42.     At the time he fled, Jason was well aware of the Freddie Gray incident, as well as numerous other stories of police brutality against black males. He truly believed John Doe 2 was going to harm him. He was right.

43.     After a short pursuit, John Does 1-5 caught up with Jason.

44.     At this point, John Does 1-5 employed excessive, unreasonable, and unnecessary force, violently slamming Jason to the ground and twisting Jason's arm to a gut-wrenching degree while Jason screamed in pain. The excessive force employed by John Does 1-5 was videotaped by Michael.

45.     While Jason was being repeatedly battered by John Does 1-5, Michael repeatedly told John Does 1-5 that Jason had done nothing wrong.

46.     John Does 1-10 had no probable cause, let alone proof, that, nor had John Does 1-10 done any investigation into whether, Jason had done anything wrong, let alone criminal. And yet, Jason found himself shackled in handcuffs after being handled violently by John Does 1-5, for no reason other than a vague phone call from a woman who had stated Jason was not doing anything wrong.

47.     Upon information and belief, it was only at this point, while Jason remained shackled for an extended and unreasonable period of time, that John Does 1-10 began to investigate the statements made by the unidentified female in her 911 call to Jane Doe 1.

48.     Upon information and belief, while Jason sat handcuffed, scared, distraught, in severe pain, and still utterly confused as to why John Does 1-10 had come after him and terrified

that his ordeal would not end, the MPD finally sent an officer to interview the unidentified

female who made the 911 call.

49.      Upon information and belief, after a simple interview, John Doe 1, the

interviewing MPD officer, reported to John Doe 6, his MPD supervisor, that "there was no

robbery" and that the 911 caller "was alarmed by the suspects as she saw them standing by the

door where she was attempting to utilize the ATM machine." It is indisputable that Jason was

already in the ATM vestibule <u>prior</u> to the 911 caller's arrival there.

50.      Upon information and belief, the unidentified female who called 911 told John

Doe 1 that "although [Jason and his friends] had not committed a crime in her presence, she still

thought that the officers should look into the juveniles, and that's why she called the police." In

other words, the unidentified female said the exact same thing to John Doe 1 that she had said in

her original 911 call to Jane Doe 1 – that Jason and his friends had done nothing wrong.

51.      Jason repeatedly asked John Does 1-10, "What did I do? What did I do?" while

sitting in handcuffs for an extended and unreasonable period of time.

52.      When they finally realized their wrongdoing, John Doe 7, an MPD officer, told

Jason, "A woman called and said you made her feel uncomfortable."

53.      Upon information and belief, after releasing Jason and his friends, John Doe 6,

"gathered the officers…to discuss with them what just happen [sic] and specifically about

making sure someone always finds the complainant so we can obtain as much information for

other officers who are canvassing for suspects."

54.      Had Jane Doe 1 passed on accurate and proper information, or had John Does 1-

10 taken any steps to actually seek out the unidentified woman who called 911, or investigate the

woman's claims in any way, none of the above would have occurred.

55.     The actions of Jane Doe 1 and John Does 1-10 were reckless, contrary to the United States Constitution, outrageous in character, and so extreme in degree, that it goes beyond all possible bounds of decency, is atrocious, and is utterly intolerable in a civilized community.

56.     As a direct and proximate result of the John Does 1-5s' use of excessive force, Jason suffered severe injuries to his face, left arm, neck, back, and thighs for which he sought medical treatment at Washington Hospital Center. At no time did Jason act negligently or assume the risk of Defendants' behavior.

57.     As a direct and proximate result of these circumstances and the Defendants' wrongful conduct as alleged herein, Jason suffered intense physical and emotional pain and suffering, and suffers, and will in the future continue to suffer, from serious emotional distress and injury.

58.     As a direct and proximate result of these circumstances and the Defendants' wrongful conduct as alleged herein, Jason will incur significant expenses in connection with the psychological care and treatment he requires.

### COUNT I
### (Negligence:  Against the District and the John and Jane Doe Defendants)

59.     The allegations of paragraphs 1 through 58 are realleged and incorporated herein.

60.     At all times relevant herein, John Doe Defendants 1-10 (unidentified MPD officers) and Jane Doe Defendant 1 (the unidentified OUC employee who took the 911 call in connection with this incident) acted as agents/employees of the District, and the District is liable for their misconduct under the doctrine of *respondeat superior*.

61.     The District and the John and Jane Doe Defendants owed a duty of care to Jason to use reasonable measures in their investigation of a 911 call and in their treatment of Jason. These duties included; <u>inter alia,</u> relaying accurate and necessary information through a 911

dispatcher to officers responding in the field; investigating a 911 caller's claims of potential

crimes in order to accurately assess and respond to a potential criminal situation; not stopping a

suspect without a reasonable and articulable suspicion that a crime had been committed; and,

protecting suspects from bodily harm through the use of only reasonable and necessary force, to

include preventing fellow MPD officers from employing excessive force.

62.     Defendants were negligent and violated the standards of care applicable to law

enforcement by, inter alia:  (1) conveying false information, or failing to convey accurate

information, from a citizen's 911 call, through Jane Doe 1 (an OUC dispatcher) to John Does 1-

10 (MPD officers responding to said call in the field) leading to John Does 1-10s' use of

unreasonable and unnecessary excessive force and false imprisonment of Jason without

reasonable suspicion or probable cause; (2) John Does 1-10s' failure to investigate the claims

made in a citizen's 911 call, leading to John Does 1-10s' use of unreasonable and unnecessary

excessive force and false imprisonment of Jason without reasonable suspicion or probable cause;

(3) John Does 1-5s' use of unreasonable and unnecessary force; (4) John Does 1-10s' failure to

prevent John Does 1-5s' use of unreasonable and unnecessary force;  and (5) falsely imprisoning

Jason without reasonable suspicion or probable cause.

63.     As a direct and proximate result of Defendants' negligence, Jason suffered serious

physical and emotional injury. Further, Jason has suffered and will continue to suffer from severe

pain, fear, suffering, sorrow, mental anguish and emotional distress, expenses for medical and

psychological care, and has otherwise been injured and damaged.

WHEREFORE, Plaintiff Jason Goolsby, requests that the Court enter judgment in his

favor and against the District of Columbia and the John and Jane Doe Defendants, jointly and

severally, as follows:  (1) for Jason's compensatory damages in an amount of not less than

$1,000,000.00, which shall be proven at trial; (2) pre- and post-judgment interest; (3) costs; and (4) such other and further relief as this Court may deem just and proper.

## COUNT II
**(False Imprisonment:  Against the District and John and Jane Doe Defendants)**

64.     Paragraphs 1-63 are incorporated by reference as though fully set forth herein.

65.     This false imprisonment action is brought by Jason against the District and the John and Jane Doe Defendants.

66.     At all times relevant herein, John Doe Defendants 1-10 (unidentified MPD officers) and Jane Doe Defendant 1 (the unidentified OUC employee who took the 911 call in connection with this incident) acted as agents/employees of the District, and the District is liable for their misconduct under the doctrine of *respondeat superior*.

67.     The District, through Jane Doe 1, relayed false or misleading information which led to John Does 1-10 violently throwing Jason to the ground, placing him in handcuffs, and affirmatively acting to prevent his free movement for an unreasonable period of time.  Based on Jane Doe 1's false or misleading information, John Does 1-10 detained Jason against his will and deprived him of his freedom of movement during the entire course of John Does 1-5s' assault and battery and John Does 1-10s' subsequent investigation into the unidentified female's 911 call.  Based on Jane Doe 1's false or misleading information, John Does 1-10, by force and by threat of force, deprived Jason of his liberty without his consent, making him stay where he did not want to stay.  Jane Doe 1's conduct was intentional, willful, reckless, wanton, and in gross disregard of Jason's rights.

68.     The District, through John Does 1-10 and without any justification, violently threw Jason to the ground, placed him in handcuffs, and affirmatively acted to prevent his free movement for an unreasonable period of time.  John Does 1-10 detained Jason against his will

and deprived him of his freedom of movement during the entire course of John Does 1-5s'

assault and battery and John Does 1-10s' subsequent investigation into the unidentified female's

911 call.  John Does 1-10, by force and by threat of force, deprived Jason of his liberty without

his consent, making him stay where he did not want to stay. John Does 1-10s' conduct was

willful, reckless, wanton, and in gross disregard of Jason's rights.

69.     Throughout all the events as described herein, Jason was conscious and aware of

his confinement, imprisonment, and deprivation of his liberty by Jane Doe 1 and John Does 1-10.

70.     As a direct and proximate result of the Jane Doe 1's and John Does 1-10s'

unlawful conduct and actions, Jason suffered the loss of his freedom and severe mental anguish,

for which he is entitled damages.

WHEREFORE, Plaintiff Jason Goolsby, requests that the Court enter judgment in his

favor and against the District of Columbia and the Jane and John Doe Defendants, jointly and

severally, as follows:  (1) for Jason's compensatory damages in an amount of not less than

$1,000,000.00, which shall be proven at trial; (2) punitive damages in the amount of

$10,000,000.00; (3) pre- and post-judgment interest; (4) costs; and (5) such other and further

relief as this Court may deem just and proper.

**COUNT III**
**(Assault and Battery:  Against the District and John Does 1-5 and Jane Doe 1)**

71.     The allegations of paragraphs 1 through 71 are realleged and incorporated herein.

72.     This assault and battery action is brought by Jason against the District, Jane Doe 1

and the John Does 1-5.

73.     At all times relevant herein, John Doe Defendants 1-5 (unidentified MPD

officers) and Jane Doe Defendant 1 (the unidentified OUC employee who took the 911 call in

14

connection with this incident) acted as agents/employees of the District, and the District is liable for their misconduct under the doctrine of *respondeat superior*.

74.     The District, through Jane Doe 1, relayed false or misleading information which led to John Doe 2 driving a police cruiser at a high rate of speed directly at Jason, John Does 1-5 threatening Jason, and/or John Does 1-5 violently throwing Jason to the ground and wrenching his arm unnaturally. Jane Doe 1's conduct was intentional, willful, reckless, wanton, and in gross disregard of Jason's rights.

75.     In driving a police cruiser at a high rate of speed directly at Jason, John Doe 2 intended to and did in fact place Jason in personal fear of bodily injury. In threatening Jason, John Does 1-5 intended to and did in fact place Jason in personal fear of bodily injury.  In violently throwing Jason to the ground and wrenching his arm unnaturally, John Does 1-5 intended to and did in fact commit an unauthorized, violent, criminal touching of Jason.  John Does 1-5s' conduct was willful, reckless, wanton, and in gross disregard of Jason's rights.

76.     As a direct and proximate result of the John Does 1-5s' unlawful conduct, Jason suffered serious physical injury. Further, Jason has suffered and will continue to suffer from severe pain, fear, suffering, sorrow, mental anguish and distress, expenses for medical and psychological care, and has otherwise been injured and damaged.

WHEREFORE Plaintiff Jason Goolsby requests that the Court enter judgment in his favor and against Defendants the District of Columbia, Jane Doe 1, and the John Does 1-5, jointly and severally, as follows:  (1) for Jason's compensatory damages in an amount of not less than $1,000,000.00, which shall be proven at trial; (2) punitive damages in the amount of $10,000,000.00; (3) pre- and post-judgment interest; (4) costs; (5) such other and further relief as this Court may deem just and proper.

## COUNT IV
### 42 U.S.C. § 1983 Deprivation of Jason's Fifth and Fourteenth Amendment Rights to Personal Security, Physical Integrity, Privacy, and Safety
### (Against:  Jane Doe Defendant 1 and John Doe Defendants 1-10, Individually)

77.    The allegations of paragraphs 1 through 76 are realleged and incorporated herein.

78.    This Count arises under 42 U.S.C. §1983 and the Fifth and Fourteenth

Amendments to the U.S. Constitution, and is alleged against Jane Doe Defendant 1 and John Doe

Defendants 1-10 in their individual capacities, jointly and severally.

79.    At all relevant times, the John and Jane Doe Defendants were acting under color

of the laws of the District, and in their capacities as employees/agents of the District.

80.    At all relevant times, Jason enjoyed the protections of the Fifth and Fourteenth

Amendments to the U.S. Constitution prohibiting, *inter alia,* deprivation of the rights to life,

privacy, safety and personal security, without due process.

81.    By the outrageous and unconscionable conduct of Jane Doe 1 in intentionally

and/or recklessly conveying false and/or misleading information to John Does 1-10 regarding the

unidentified woman's 911 call, Jane Doe 1 set in force a series of incidents which led to Jason

being deprived of his constitutional liberty and clearly-established rights to be free of

unreasonable state intrusions into bodily security and unreasonable threats to physical safety

under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution as

applicable to the District through the Fifth Amendment of the U.S. Constitution.

82.    By the outrageous and unconscionable conduct of assaulting Jason without any

proof of wrongdoing, no reasonable suspicion, and no probable cause, and when he posed no

reasonable threat to the safety of the law enforcement officers, the other people present on the

scene, or himself, John Does 1-10 deprived Jason of his constitutional liberty and clearly-

established rights to be free of unreasonable state intrusions into bodily security and

unreasonable threats to physical safety under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution as applicable to the District through the Fifth Amendment of the U.S. Constitution.

83.     The actions of Jane Doe 1 and John Doe 1-10 were shocking to the conscience, and in deliberate indifference to and willful and callous disregard of, Jason's constitutional and/or federally protected rights to life, personal security, safety, physical integrity and privacy.

84.     Jane Doe 1 and John Does 1-10 abused their authority by acting with deliberate indifference to, and with reckless, willful and callous disregard for, the known substantial risk of, injury to Jason, in deprivation of his constitutional rights, which is shocking to the conscience.

85.     As a direct and proximate result of the foregoing deliberate indifference on the part of Jane Doe 1 and John Does 1-10, acting under color of the laws of the District, Jason suffered serious physical injury. Further, Jason has suffered and will continue to suffer from severe pain, fear, suffering, sorrow, mental anguish and distress, expenses for medical and psychological care, and has otherwise been injured and damaged.

86.     For the foregoing deprivations of Jason's rights to personal security, physical integrity and privacy, the John and Jane Doe Defendants are liable in their individual capacities for compensatory damages, as well as reasonable attorneys' fees and costs, as permitted under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Jason Goolsby requests that the Court enter judgment in his favor and against Jane Doe 1 and John Does 1-10, jointly and severally, as follows:  (1) for Jason's compensatory damages in an amount of not less than $1,000,000.00, which shall be proven at trial; (2) punitive damages in an amount not less than $10,000,000.00; (3) reasonable

attorneys' fees and costs, as permitted under 42 U.S.C. § 1988; (4) pre- and post-judgment interest; (5) costs; and (6) such other and further relief as this Court may deem just and proper.

**COUNT V**
**42 U.S.C. § 1983 Deprivation of Jason's Fourth Amendment Rights Against Unreasonable Seizure/Restraint**
**(Against: Jane Doe Defendant 1 and John Doe Defendants 1-10, Individually)**

87.     The allegations of paragraphs 1 through 86 are realleged and incorporated herein.

88.     This Count arises under 42 U.S.C. § 1983, and is alleged against John Does 1-10, jointly and severally, for their actions and conduct in deprivation of Jason's right not to be subjected to unreasonable seizures under the Fourth Amendment of the U.S. Constitution.

89.     At all relevant times, the John and Jane Doe Defendants were acting under color of the laws of the District, and in their capacities as employees/agents of the District.

90.     By the outrageous and unconscionable conduct of relaying false or misleading information to the MPD officers in the field, Jane Doe 1 created a situation wherein John Does 1-10 assaulted and detained Jason without any proof of any wrongdoing or crime, no reasonable suspicion, and no probable cause, and when he posed no reasonable threat to the safety of the law enforcement officers, the other people present on the scene, or himself, subjecting Jason to an unreasonable seizure under the Fourth Amendment.

91.     By the outrageous and unconscionable conduct in assaulting and detaining Jason without any proof of any wrongdoing or crime, no reasonable suspicion, and no probable cause, and when he posed no reasonable threat to the safety of the law enforcement officers, the other people present on the scene, or himself, John Does 1-10 subjected Jason to an unreasonable seizure under the Fourth Amendment.

92.     By the outrageous and unconscionable conduct in assaulting and detaining Jason, Jane Doe 1 and John Does 1-10 deprived Jason of his clearly-established right against unreasonable seizures under the Fourth Amendment to the U.S. Constitution.

93.     Jane Doe 1's actions and John Does 1-10s' employment of unreasonable and excessive force, and their detainment of Jason, in deprivation of Jason's Fourth Amendment rights was a direct and proximate cause of his physical, emotional, and mental injuries, for which John Does 1-10 are jointly and severally liable to the Jason under 42 U.S.C. §1983 for compensatory damages in an amount of $1,000,000.00 and, pursuant to 42 U.S.C. §1988, for reasonable attorneys' fees incurred in this action.

94.     Because Jane Doe 1's actions, including, relaying false or misleading information from a 911 call, and John Doe 1-10's misconduct, including, employment of unreasonable and/or excessive force and wrongful detainment, reflects deliberate indifference and a reckless and conscious disregard for Jason's right against unreasonable seizures under the Fourth Amendment, these Defendants are liable for punitive damages in an amount of $10,000,000.00.

WHEREFORE, Plaintiff Jason Goolsby requests that the Court enter judgment in his favor and against Jane Doe 1 and John Doe Defendants 1-10, jointly and severally, as follows: (1) for Jason's compensatory damages in an amount of not less than $1,000,000.00, which shall be proven at trial; (2) punitive damages in an amount not less than $10,000,000.00; (3) reasonable attorneys' fees and costs, as permitted under 42 U.S.C. § 1988; (4) pre- and post-judgment interest; (5) costs; and (6) such other and further relief as this Court may deem just and proper.

<u>COUNT VI</u>
**(Intentional Infliction of Emotional Distress:  Against the District the Jane and John Doe Defendants)**

95.     Paragraphs 1-94 are incorporated by reference as though fully set forth herein.

96.     This intentional infliction of emotional distress action is brought by Jason against the District and the John and Jane Doe Defendants.

97.     At all times relevant herein, John Doe Defendants 1-10, unidentified MPD officers, and Jane Doe Defendant 1, the unidentified OUC employee who took the 911 call in connection with this incident, acted as an agents/employees of the District, and the District is liable for their misconduct under the doctrine of *respondeat superior*.

98.     The District, through Jane Doe 1, intentionally and/or recklessly conveyed false information and/or failed to convey the accurate information from a citizen's 911 call, to John Does 1-10, MPD officers responding to said call in the field, leading to John Does 1-10s' use of excessive force and false imprisonment of Jason.

99.     John Doe 2, an MPD officer, intentionally and recklessly drove his cruiser at a high rate of speed directly at Jason, intending to and in fact placing Jason in personal fear of bodily injury.

100.     In threatening Jason, John Does 1-5 intended to and did in fact place Jason in personal fear of bodily injury.

101.     In violently throwing Jason to the ground and wrenching his arm unnaturally, John Does 1-5 intended to and did in fact commit an unauthorized, violent, criminal touching of Jason.

102.    All of the enumerated conduct above was so outrageous in character, and so extreme in degree, that it goes beyond all possible bounds of decency, is atrocious, and is utterly intolerable in a civilized community.

103.    As a direct and proximate result of the Defendants' unlawful, intentional, and reckless conduct, Jason suffered serious physical injury and severe emotional distress so acute that harmful physical consequences might be not unlikely to result. Further, Jason has suffered and will continue to suffer from severe pain, fear, suffering, sorrow, mental anguish and distress, expenses for medical and psychological care, and has otherwise been injured and damaged.

WHEREFORE Plaintiff Jason Goolsby requests that the Court enter judgment in his favor and against Defendants the District of Columbia and the John and Jane Doe Defendants as follows:  (1) for Jasons's compensatory damages in an amount of not less than $1,000,000.00, which shall be proven at trial; (2) punitive damages in the amount of $10,000,000.00; (3) pre- and post-judgment interest; (4) costs; (5) such other and further relief as this Court may deem just and proper.

## JURY TRIAL REQUESTED

Plaintiff respectfully requests a jury trial in this action to the maximum extent permitted by law.

Respectfully submitted,

By: _____

Peter C. Grenier, Esquire (418570)
GRENIER LAW GROUP PLLC
1400 L Street, N.W.
Suite 420
Washington, D.C. 20005
(202) 768-9600 (telephone)
(202) 768-9604 (facsimile)
pgrenier@grenierlawgroup.com
*Counsel for Plaintiff*

Dated:  October 11, 2016